UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BONITA B.,[1]

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

<u>DECISION & ORDER</u>

20-CV-1894MWP

## **<u>PRELIMINARY STATEMENT</u>**

Plaintiff Bonita B. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 11).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 5, 7). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

_____

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.

Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

       A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*). The five steps are:

    (1)    whether the claimant is currently engaged in substantial
            gainful activity;

    (2)    if not, whether the claimant has any "severe impairment"
            that "significantly limits [the claimant's] physical or mental
            ability to do basic work activities";

    (3)    if so, whether any of the claimant's severe impairments
            meets or equals one of the impairments listed in Appendix
            1 of Subpart P of Part 404 of the relevant regulations (the
            "Listings");

    (4)    if not, whether despite the claimant's severe impairments,
            the claimant retains the residual functional capacity
            [("RFC")] to perform [his/her] past work; and

    (5)    if not, whether the claimant retains the [RFC] to perform
            any other work that exists in significant numbers in the
            national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.    The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  (Tr. 15-22).[2]  Under step one of the process, the ALJ found that plaintiff had

not engaged in substantial gainful activity since March 15, 2018, the application date.  (Tr. 17).

At step two, the ALJ concluded that plaintiff had the following severe impairments: osteoarthritis

and degenerative joint disease of the knees and degenerative disc disease of the lumbar spine.

(Tr. 17-18).  At step three, the ALJ determined that plaintiff did not have an impairment (or

combination of impairments) that met or medically equaled one of the listed impairments.

(Tr. 18).  The ALJ concluded that plaintiff had the RFC to perform light work with certain

limitations.  (Tr. 18-22).  Specifically, the ALJ found that plaintiff could occasionally balance,

stoop, crouch, and climb ramps and stairs, but could not kneel, crawl, or climb ladders, ropes, or

scaffolds.  (*Id.*).  At steps four and five, the ALJ determined that plaintiff had no past relevant

work, but that other positions existed in the national economy that plaintiff could perform,

including merchandise marker, router, order caller, office helper, and ticket seller.  (Tr. 20-22).

Accordingly, the ALJ found that plaintiff was not disabled.  (*Id.*).

---

[2]  The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize
the internal Bates-stamped pagination assigned by the parties.

**III.**    **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination is not supported by substantial evidence.  (Docket # 5-1).  Plaintiff's sole challenge is that the ALJ's RFC assessment lacks substantial evidence because it was not supported by any medical opinion assessing plaintiff's functional limitations.  (*Id.*).

**IV.**    **Analysis**

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order), "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018) (quotations omitted).  Accordingly, although the RFC

determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

A medical source statement or formal medical opinion is not necessarily required if "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC]." *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order). For instance, where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted). Similarly, an ALJ may permissibly make an RFC assessment without a medical opinion "when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Donald G. v. Comm'r of Soc. Sec.*, 2022 WL 3209585, *4 (W.D.N.Y. 2022). In other words, an ALJ "may not interpret raw medical data in functional terms," *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *3 (W.D.N.Y. 2019) (internal quotations and citations omitted), and "where the record lacks both a functional assessment and clear evidence demonstrating the plaintiff's functional abilities," *Donald G. v. Comm'r of Soc. Sec.*, 2022 WL 3209585 at *4, remand is appropriate, *see*, *e.g.*, *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711 at *3-4; *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d at 260; *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226-27 (W.D.N.Y. 2018).

In this case, the ALJ determined at step two that plaintiff had the severe impairments of osteoarthritis and degenerative joint disease of the knees and degenerative disc

disease of the lumbar spine.  (Tr. 17).  Plaintiff testified that she suffered from constant sharp

pain in her legs that required her to wear a brace and use a cane to ambulate.  (Tr. 37-38).

According to plaintiff, she could only sit or stand for approximately ten minutes at a time, and

she could only walk approximately half a block at a time.  (Tr. 38-39).  Plaintiff also testified

that she needed to elevate her legs when sitting.  (Tr. 39).  Despite this testimony, the ALJ

determined that plaintiff was capable of performing light work with some postural limitations,

including only occasional balancing, stooping, crouching, and climbing of stairs and ramps, and

no kneeling, crawling, or climbing ladders, ropes, or scaffolds.  (Tr. 18).  In making this RFC

determination, the ALJ summarized portions of the medical evidence and plaintiff's hearing

testimony and noted that plaintiff received ongoing treatment for her knee impairments, but

determined that many of the objective findings were "mild" and that plaintiff's most recent

treatment notes suggested few objective abnormalities with respect to plaintiff's knee and back

impairments.  (Tr. 18-20).

        The treatment notes demonstrate that plaintiff received ongoing treatment from

her primary care physician and orthopedic specialists to address her ongoing knee and leg pain.

(Tr. 229-53, 285-348, 379-98, 417-22).  Those records demonstrate that plaintiff complained of

pain in her knee beginning as early as 2014.  (Tr. 340-42).  Plaintiff's primary care provider

Takesha Leonard, FNP, prescribed a variety of conservative treatments to address plaintiff's

ongoing complaints, including anti-inflammatories, physical therapy, and injections.

(Tr. 229-53, 285-348).  February 2018 imaging of plaintiff's right knee demonstrated mild

degenerative joint disease and a suspected moderate knee joint effusion.  (Tr. 251).  With respect

to plaintiff's left knee, the February 2018 images revealed mild degenerative changes and a bone

spur.  (Tr. 253).  An MRI of plaintiff's left knee conducted in May 2018 demonstrated a complex

tear of the posterior horn of the lateral meniscus and a suspected horizontal tear of the anterior

horn of the lateral meniscus. (Tr. 300). The MRI also demonstrated moderate degenerative

spurring at the lateral joint compartment, a large knee joint effusion with plica formation present

at the suprapatellar bursar, and a large Baker's cyst at the popliteal fossa. (*Id.*).

Leonard prescribed a cane and referred plaintiff to an orthopedic clinic for further

treatment. (Tr. 306). Plaintiff began treatment with Joseph B. Kuechle, MD, at the orthopedic

clinic on September 13, 2018. (Tr. 393-95). Imaging of plaintiff's left knee taken that day

demonstrated moderate to severe bilateral compartmental degeneration of the left knee with joint

space narrowing and osteophyte formation and mild degeneration in the patellofemoral joint.

(Tr. 394). Images of the right knee demonstrated moderate degeneration within the medial

compartment with slight joint space narrowing and osteophyte formation. (*Id.*). Plaintiff

continued to receive ongoing treatment at the orthopedic clinic throughout the remainder of 2018

and 2019. (Tr. 379-99, 417-22). During that time, her orthopedic providers recommended

several treatment options, including a knee brace, corticosteroid injections, anti-inflammatory

medication, and physical therapy. (*Id.*). After attempting these options, plaintiff was

recommended for arthroscopic surgical repair of her knee. (Tr. 419).

The only medical opinion contained in the record was rendered by non-examining

state consultant Gary Ehlert, MD, who opined that he was unable to assess plaintiff's capabilities

due to insufficient evidence. (Tr. 49-50). Accordingly, there are no opinions in the record

reflecting plaintiff's work-related capabilities, whether from one of plaintiff's treating medical

sources or otherwise. To the extent the Commissioner maintains that the absence of any medical

opinion owes to plaintiff's failure to cooperate (Docket # 7-1 at 7), I disagree. The record

suggests that no consultative evaluations were ever scheduled for plaintiff because she failed to

complete and return an Activities of Daily Living ("ADL") form. (Tr. 50). Yet, plaintiff did submit the form after being contacted on May 10, 2018, and advised that she had ten days to complete and return the form. (Tr. 182-90). Accordingly, the record does not establish that plaintiff failed to cooperate. *See Murray v. Comm'r of Soc. Sec.*, 2019 WL 4263336, *4 (W.D.N.Y. 2019) (record did not establish failure to cooperate where plaintiff testified she did not recall ever receiving ADL form).

In this case, the medical records demonstrate that plaintiff suffered from several significant impairments, particularly in her knees, for which her treating providers prescribed use of a brace and a cane and ultimately recommended surgical repair. In the present case, "[t]he Commissioner does not argue, and the Court does not find, that [p]laintiff's impairments were so simple and mild that the ALJ could craft an RFC based on common sense." *Carla S. v. Comm'r of Soc. Sec.*, 2020 WL 7021441, *3 (W.D.N.Y. 2020) (collecting cases). Rather, the Commissioner maintains that despite the absence of any medical opinion evidence, the ALJ's RFC assessment was adequately supported by the record. (Docket # 7-1 at 7). Again, I disagree. Although the record contains treatment notes, including some from specialists, those notes generally contain bare medical findings and do not address or shed light on how plaintiff's impairments affect her physical ability to perform work-related functions. Indeed, the treatment notes primarily consist of physical examinations and imaging results and do not contain any useful assessment from any medical source of plaintiff's physical limitations. Given the record evidence of significant impairments and the absence of any useful assessment from a medical source concerning plaintiff's functional capabilities, I find that the RFC is not supported by substantial evidence and that remand is warranted. *See Tina M. T. v. Comm'r of Soc. Sec.*, 2022 WL 4091882, *4 (W.D.N.Y. 2022) ("[i]n the face of these non-trivial diagnoses, the lack of

9

medical assessment as to *any* limitation is an obvious gap in the record") (internal quotations omitted); *Kim T. v. Comm'r of Soc. Sec.*, 2022 WL 2114798, *6 (W.D.N.Y. 2022) ("[o]n this record, the ALJ was not permitted to rely on her own lay assessment of the medical evidence to assess [p]laintiff's RFC[;] [i]nstead there was a gap in the record that she was required to fill"); *Manzella v. Comm'r of Soc. Sec.*, 2021 WL 5910648, *16 (S.D.N.Y.) ("the [c]ourt finds that the lack of a treating medical source opinion containing a function-by-functions assessment of [plaintiff's] RFC rendered the record incomplete") (internal quotations omitted), *report and recommendation adopted by*, 2021 WL 5493186 (S.D.N.Y. 2021); *Deborah H. v. Comm'r of Soc. Sec.*, 2021 WL 1608574, *5 (W.D.N.Y. 2021) ("[w]ithout a medical opinion [i]n the record, without a useful assessment of [p]laintiff's functional limitations, and with evidence suggesting severe limitations regarding [p]laintiff's hearing loss, the RFC is not supported by substantial evidence").

        In addition, the ALJ's repeated mischaracterizations and selective citation of the evidence further undermine her determination.  First, citing February 2018 images of plaintiff's knees, the ALJ suggested that plaintiff suffered from only mild degeneration.  (Tr. 20 ("[t]he degenerative changes found on the claimant's bilateral knee x-rays in February 2018 were mild")).  Subsequent imaging, however, demonstrated "moderate to severe" degenerative changes in plaintiff's left knee, along with a meniscus tear.  (Tr. 300, 394).  Additionally, the ALJ suggested that physical examinations of plaintiff's knees demonstrated only minimal objective findings.  (Tr. 20 ("examination of the claimant['s] knees showed no deformity, edema, swelling, or warmth[;] . . . [l]ater examinations noted no such findings")).  Yet, those same treatment notes contained abnormal physical findings relating to plaintiff's knees that were not mentioned by the ALJ, including crepitus, effusion, swelling, tenderness, and diminished

strength and range of motion.  (Tr. 248, 290, 293, 297, 300, 303).  Indeed, plaintiff's treatment records routinely reflected that physical examinations of plaintiff's knees identified several abnormal objective findings.  (Tr. 237, 245, 248, 290, 293, 297, 300, 303, 306, 312, 329, 332, 338, 341, 386, 389, 391, 394, 418).  The ALJ also suggested that the medical records demonstrated that plaintiff did not require the use of a cane because her primary care physician instructed her to exercise at least thirty minutes per day, which according to the ALJ, "is not consistent for a claimant who requires a cane."  (Tr. 20).  Whether or not the ALJ's conclusion was sound, the treatment note cited by the ALJ predated by three months the appointment at which plaintiff was prescribed a cane.  (Tr. 240-43, 305-306).  Similarly, the ALJ highlighted the absence of any knee-related objective findings or reference to plaintiff's cane in the records for her most recent primary care appointment.  (Tr. 20 ("[h]er most recent treatment record from her primary care provider did not note a further requirement for a cane[;] [n]or did it indicate any edema in her knees or a requirement that she elevate her legs")).  The purpose of plaintiff's appointment that day, however, was to address her hypertension and a rash, and it does not appear that her provider evaluated her knee impairments during the visit.  (Tr. 399).  Indeed, records from a subsequent appointment with plaintiff's orthopedic provider suggested that plaintiff continued to use her cane and reflected that a physical examination that day continued to demonstrate abnormal knee-related findings, including tenderness, positive patellar compression and grind, pain with range of motion, and a positive McMurray's test.  (Tr. 417-19).

"[W]here the record lacks both a functional assessment and clear evidence demonstrating the plaintiff's functional abilities," *Donald G.*, 2022 WL 3209585 at *4, "to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing," *Rahfeez J.H. v.*

*Comm'r of Soc. Sec.*, 2021 WL 4260439, *3 (W.D.N.Y. 2021) (quotation omitted).  Review of the record leads me to conclude that remand is appropriate to allow the ALJ to do so here.  *See Tavion T. v. Comm'r of Soc. Sec.*, 2021 WL 1559243, *4 (W.D.N.Y. 2021) ("[t]he only 'opinions' of record were a non-examining consultant's opinion that the record contained insufficient evidence to form an opinion[;] . . . [b]ecause of the above issues, especially with regard[] to the lack of medical opinion evidence regarding functional limitations caused by [p]laintiff's mental impairments, there exists a gap in the record"); *Timothy S. v. Comm'r of Soc. Sec.*, 2021 WL 661392, *3 (W.D.N.Y. 2021) ("the ALJ is a layperson and was not permitted to draw the sorts of highly specific functional limitations from the medical evidence as she did, absent the support of a medical opinion or other functional assessment by a medical source"); *Barnhardt v. Saul*, 2020 WL 1330704, *3-4 (W.D.N.Y. 2020) ("the sole opinion in the record was from the [s]tate [a]gency consultant, who concluded that there was insufficient evidence to decide the claim and, therefore, that opinion did not contain any functional assessment[;] . . . without any functional medical opinion evidence, the RFC could not have been based upon substantial evidence").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 5)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**


                                                    _____*s/Marian W. Payson*_____
                                                    MARIAN W. PAYSON
                                                    United States Magistrate Judge


Dated:  Rochester, New York
        March 3, 2023